**FILED**
**Nov 24, 2025**
**09:06 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION CLAIMS
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| **KENIA LORENZO SUAREZ,** | ) | **Docket No. 2024-50-2258** |
| **Employee,** | ) | |
| **v.** | ) | |
| | ) | |
| **WCSC TENNESSEE, LLC,** | ) | **State File No. 63547-2023** |
| **Employer,** | ) | |
| **And** | ) | |
| | ) | |
| **SFM MUT. INS. CO.,** | ) | **Judge Dale Tipps** |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER DENYING BENEFITS

---

The Court held an Expedited Hearing on November 13, 2025. The issue was whether Ms. Suarez is likely to prove at trial entitlement to additional temporary disability and medical benefits. For the reasons below, the Court holds that, while Ms. Suarez is likely to prevail at a hearing on the merits that she is entitled to continuing medical treatment, she is not likely to prove entitlement to additional temporary disability benefits or the specific requested medical treatment.

### History of Claim

This is the second expedited hearing in this case. Following the first hearing, the Court granted part of Ms. Suarez's temporary disability benefits request and ordered WCSC to authorize physical therapy.

Ms. Suarez was working as a home health provider for WCSC when she fell and injured herself at a client's home on August 7, 2023. WCSC accepted the claim and furnished medical treatment at a clinic until she received an orthopedic referral.

Ms. Suarez then selected orthopedist Dr. Erion Qamirani from a panel. He noted that her MRI showed degenerative changes without stenosis, and he assessed lumbar sprain

and radiculopathy. He saw "no surgical indications" and referred her to Dr. Kenneth Sykes, a pain medicine specialist, for a right L4-5 epidural steroid injection. Before that referral appointment took place, a physician assistant in Dr. Qamirani's office wrote a prescription for gabapentin. Ms. Suarez testified that she took only one dose because it caused a severe reaction, including facial numbness.

Dr. Sykes suggested an epidural injection without the steroid. Ms. Suarez said she did not want to proceed with any treatment until she was seen for her neck complaints.

When Ms. Suarez returned in May, Dr. Sykes discussed a nerve block but noted she wanted a neurologist to evaluate the symptoms she experienced after taking gabapentin. Ms. Suarez also continued to complain of cervical pain, and Dr. Sykes explained that the carrier would have to approve an examination of her neck. He referred her to a neurologist.

Ms. Suarez selected Dr. Richard Rubinowicz from a neurologist panel and saw him once. She reported light sensitivity and "right sided facial numbness and pressure discomfort." After examining her, the doctor wrote, "I do not feel the gabapentin produced the symptoms she is reporting. . . . No additional intervention with neurology is required[,] and she can be discharged."

Drs. Rubinowicz and Qamirani both completed C-30A forms with the opinion that Ms. Suarez reached maximum medical improvement on July 22, 2024.

On August 12, Dr. Sykes assessed lumbar sprain and lumbar radiculopathy. He no longer felt Ms. Suarez was a candidate for nerve blocks or injections. Instead, he recommended more physical therapy.

Dissatisfied with Dr. Rubinowicz's conclusions, Ms. Suarez saw neurologist Dr. Norman McNulty with complaints of pain and paresthesia in her face.[1] He assessed right trigeminal neuralgia and prescribed oxcarbazepine but noted that she was "hesitant to try any medication as she believes that gabapentin caused these symptoms."

After the first Expedited Hearing, WCSC authorized the physical therapy prescribed by Dr. Sykes, which Ms. Suarez completed. He then prescribed more therapy for both lumbar and cervical radiculopathy, restricted her from driving, and limited her to sedentary work.

When Ms. Suarez returned on July 28, Dr. Sykes ordered a cervical MRI to rule out cord compression. He also renewed her temporary restrictions and instructed her to follow up with him after the MRI. Dr. Sykes said Ms. Suarez "reports she is seeing an orthopedist

---

[1] Dr. McNulty's records were excluded from the first expedited hearing because they were filed too late. They were made an exhibit during the second hearing.

for further evaluation and treatment for her lumbar spine." She did not return to Dr. Sykes until November 10.

The reason for this delay is somewhat convoluted. After Ms. Suarez told Dr. Sykes about her unauthorized treatment, WCSC scheduled a return appointment with Dr. Qamirani and resumed temporary disability payments. However, Dr. Qamiriani declined to see her again. So, WCSC offered several orthopedic panels only to have the chosen doctor refuse Ms. Suarez as a patient. At the time of the hearing, no orthopedist had seen her.

Nonetheless, Ms. Suarez was eventually scheduled to return to Dr. Sykes after a few months but rescheduled in an unsuccessful attempt to see an out-of-state orthopedist on her own. As a result, WCSC suspended her temporary disability benefits for noncompliance. She eventually saw Dr. Sykes a few days before the hearing, but records from that visit were not yet available.

As in the first hearing, Ms. Suarez testified that since taking the gabapentin she has experienced burning or numbness on one side of her face. She feels "fuzzy," can't sleep, and no longer drives. Ms. Suarez has been unable to work.

On cross-examination, Ms. Suarez admitted that WCSC has not denied any treatment ordered by an authorized physician. She also confirmed that it offered a return to Dr. Rubinowitz, but she does not want to see him.

Ms. Suarez argued that she needs additional treatment so she can return to work. She asked to be allowed to treat with out-of-state orthopedists because of the problems finding a doctor willing to see her, and she sought reimbursement for unauthorized medical expenses. Ms. Suarez also requested temporary total disability benefits from October 2024 until WCSC resumed her payments on July 28 2025.[2] Finally, she contended she is entitled to temporary total disability benefits from the time they were suspended in October 2025 through the present.

WCSC argued that it furnished all ordered treatment. In spite of the problems getting a doctor to accept Ms. Suarez as a patient, it continues to offer valid panels for treatment. It also contended that Ms. Suarez's requests for an orthopedist outside of the relevant community and for medical expense reimbursement are not authorized by the statute. Regarding temporary disability benefits, WCSC insisted that they have been paid consistent with her light duty work period and her medical restrictions.

---

[2] She admitted during the hearing that she worked light duty both in person and online from approximately October 2024 through February 2025.

**Findings of Fact and Conclusions of Law**

Ms. Suarez must show she is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(c)(6) (2024); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Turning first to Ms. Suarez's request for additional medical benefits, under Tennessee Code Annotated section 50-6-204(a)(1)(A), WCSC must provide medical treatment made reasonably necessary by the work accident. To accomplish this, it must offer a panel of three physicians. Tenn. Code Ann. § 50-6-204(a)(3)(A)(i).

WCSC met these requirements, as Ms. Suarez chose both Drs. Qamirani and Rubinowicz from their respective panels. Further, under section 50-6-204(a)(3)(A)(ii), WCSC properly authorized and furnished treatment with Dr. Sykes, as he was a direct referral from Dr. Qamirani.

The referral to Dr. Sykes is problematic for Ms. Suarez's request for another orthopedist. "Under Tennessee Code Annotated section 50-6-204(a)(3)(E), once a treating physician refers an injured employee to a specialist, that specialist becomes the treating physician 'until treatment by the . . . specialist concludes, and the employee has been referred back to the treating physician selected by the employee from the initial panel.'" *Freeman v. Certified Maintenance Service, Inc.*, 2023 TN Wrk. Comp. App. Bd. LEXIS 18, at *7 (March 29, 2023). This means that Dr. Sykes became Ms. Suarez's authorized physician, and he remains her treating doctor unless he refers her back to Dr. Qamirani. There is no evidence in the record that he did this or recommended any other orthopedic treatment.[3] Without that evidence, the Court cannot find Ms. Suarez is likely to prove that Dr. Qamirani's refusal to see her entitles her to an orthopedic appointment, whether in Tennessee or another state. She is entitled to ongoing reasonable, necessary, and related treatment with Dr. Sykes as the current authorized treating physician.

Regarding the claim for reimbursement of medical expenses, an employer may be required to pay for unauthorized treatment if it does not provide the treatment made reasonably necessary by the work injury. *See Hackney v. Integrity Staffing Solutions,* 2016 TN Wrk. Comp. App. Bd. LEXIS 29, at *8-9 (July 22, 2016). The Court recognizes Ms. Suarez's dissatisfaction with her medical treatment, but she presented no proof that WCSC failed to provide authorized physicians or approve their treatment. Further, she offered no medical evidence that her claimed expenses were reasonable and necessary. Absent that proof, the Court finds she is unlikely to prove entitlement to reimbursement for her expenses.

Turning to Ms. Suarez's claim for temporary disability benefits, an injured worker

---

[3] The Court notes that Dr. Sykes practices in a large orthopedic group.

is eligible for temporary total disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). Ms. Suarez offered no medical proof of any period of total disability for which she has not already received benefits.

Alternatively, temporary partial disability benefits are available when the temporary disability is not total." Specifically, the Board has explained:

> Temporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery. (citation omitted) Thus, in circumstances where the treating physician has released the injured worker to return to work with restrictions prior to maximum medical improvement, and the employer either (1) cannot return the employee to work within the restrictions or (2) cannot provide restricted work for a sufficient number of hours and/or at a rate of pay equal to or greater than the employee's average weekly wage on the date of injury, the injured worker may be eligible for temporary partial disability. *Id.*

This means that Ms. Suarez must show that her treating physician returned her to work with restrictions that WCSC either could not or would not accommodate. *Id.* at *7-8. Dr. Sykes assigned restrictions on May 19, 2025, and renewed those restrictions on July 28. However, the parties offered no proof about whether WCSC offered appropriate light-duty work, whether Ms. Suarez declined the offer, or whether the circumstances justified her refusal to return to work in a restricted-duty position. *Hardin v. Royal & Sunalliance Ins.,* 104 S.W.3d 501, 505 (Tenn. 2003).

Without this information, the Court cannot determine whether she is likely to prove entitlement to additional temporary disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. WCSC shall continue to provide Ms. Suarez with medical treatment made reasonably necessary by her August 7, 2023 injury under Tennessee Code Annotated section 50-6-204.

2. Ms. Suarez's claim for temporary disability benefits is denied.

3. A status hearing will take place on **February 25, 2026, at 9:30 a.m. Central Time.** The parties must call 615-741-2112 to participate.

4. Unless an interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit confirmation within seven business days may result in a penalty assessment for non-compliance. For questions regarding compliance, contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED November 24, 2025.**

_____
**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. WCSC's indexed hearing exhibits
2. Ms. Suarez's indexed hearing exhibits
3. Emails between Ms. Suarez and WCSC's counsel
4. Records from Express Med (identification only)
5. Records from Southern Tennessee Regional Health System
6. Discharge instructions from Southern Tennessee Regional Health System (identification only)
7. Medical bills and expense summaries (identification only)
8. December 4, 2023 record from Fastpace Health
9. Tennessee Orthopedic Alliance Worklink and Therapy orders
10. Emails between Ms. Suarez and WCSC's counsel
11. Facsimile correspondence between Ms. Suarez and Leah Morini
12. Records from Dr. Ronald McNulty
13. Emails between Ms. Suarez and WSCS
14. WCSC's indexed hearing exhibits (filed October 29, 2025)
15. Ms. Suarez's indexed hearing exhibits (filed October 30, 2025)
16. Records from Express Med
17. Unindexed medical records and bills
18. Claim payment register

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on November 24, 2025.

| Name | U.S. Mail | Email | Service sent to: |
|------|-----------|-------|------------------|
| Kenia Lorenzo Suarez | | X | j.plus.kel@gmail.com |
| Ryan Mirian, Employer Attorney | | X | RMirian@eraclides.com |

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   - ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   - ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
[www.tn.gov/workforce/injuries-at-work/](www.tn.gov/workforce/injuries-at-work/)
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____   ☐ Motion Order filed on _____

☐ Compensation Order filed on_____   ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*